FILED 13 JUN '11 14:50 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DR. REVELS CAYTON; GERALD BURKE; MICHAEL LINDSAY; RC VENTURES GROUP, LLC; BURK AIRCRAFT LLC; and LINDSAY ASSETS, LLC, | 09-CV-6333-TC |
| Plaintiffs, | FINDINGS AND RECOMMENDATION |
| v. | |
| BATTLE CREEK STATE BANK, a Nebraska corporation; AERO CREDIT CORP., an Oregon corporation; BRUCE CADY, an individual; and DOES 1 through 50, inclusive, | |
| Defendants. | |

COFFIN, Magistrate Judge:

As discussed in more detail below, plaintiffs bring several claims in this action. Jurisdiction is based on diversity of citizenship.

Presently before the court is defendant Battle Creek State Bank's motion (# 65) for summary judgment.

Page 1 - FINDINGS AND RECOMMENDATION

## Legal Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  There must be no genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim.  Id.; see also, Bhan v. NME Hosp., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).  In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial."  Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  Anderson, 477 U.S. at 248.  Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id.  On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted.  Id.

## Factual Background

Plaintiffs are individual purchasers of aircraft fabrication kits from nonparty Epic Aircraft. Plaintiffs financed their aircraft through lines of credit with defendant Battle Creek State Bank (Bank). Defendant Bruce Cady arranged the lines of credit and defendant Aero Credit Corporation was Cady's company.

Epic Aircraft eventually went bankrupt and plaintiffs incurred losses. Plaintiffs allege that they were induced by defendants' representations to enter into contracts with Epic Aircraft and to incur debt. They assert claims for fraud, negligent misrepresentation, negligence, conspiracy, tort of another, declaratory relief, breach of fiduciary duty, and breach of oral contract. Plaintiffs allege, among other things, that the Bank, Cady and Aero Credit were agents, partners, and/or joint venturers of each other and that they are jointly and severally liable for all the acts and omissions of each other under the doctrines and principles of partnership law, agency and respondent superior.

## Discussion

Defendant Bank contends in its motion for summary judgment that it never had any substantive contact with plaintiffs and that Cady, through his company Aero Credit, was an independent loan broker and that there was not a partnership, agency or other type of relationship with the Bank that would subject the Bank to liability in this action. This court finds however, that there are genuine issues of material fact in this matter and that most of the claims should go to trial.

The record contains, among other things, promotional materials and emails.

Page 3 - FINDINGS AND RECOMMENDATION

Promotional materials mentioning Cady and prominently listing the contact numbers of the Bank and Cady's Aero Credit Corporation state that:

"we are long-term partners in the aviation industry;"

" through a collaborative partnership spearheaded by Battle Creek State Bank, we solicit loan participations from a network of bankers secured by high-quality aircraft loans, supported by a coveted clientele of strong borrowers ; " and

"Our collaborative partnership is a joint venture between three entities, two of the aviation industry's leading loan originators, AirFleet Capital and Aero Credit Corp, and Battle Creek State Bank ..."
P.p. 1- 4 of Deposition Exh. 64, attached to #68.

An email from Cady to the Bank's President states:

" I copied you on solicitations sent to 12 banks that are prospective buyers of **our paper** in the hope of generating interest and activity at our booth at the ABA convention."
Deposition Exh. 61 attached to #74 (emphasis added).

An email from Cady to another bank and copied to the Bank's President on October 2, 2008 states:

"In the last two years, Aero Credit Corp has also developed a Collaborative Partnership with two additional entities –Aero Credit Corp's counterpart, Airfleet Capital of Leesburg, Virginia and Battle Creek State Bank of Battle Creek, Nebraska. Collectively, we currently originate 225MM in aircraft loan volume annually and are routing an increasing portion of that volume through Battle Creek State Bank, which retains Servicing Rights and sells participations in the loan portfolios to associated banks....

Our Collaborative Partnership maintains an interest on further exploring the development of a long-

Page 4 - FINDINGS AND RECOMMENDATION

term mutually rewarding business relationship with Mutual of Omaha Bank. In the meantime, feel

free to contact Mr. Roger Brestal of Battle Creek State Bank, Mr. Steve Smestad of Airfleet Capital

or me with any questions you may develop. "

Exh. 62 attached to # 74, also see Exh. 63 attached to #74..

As detailed above, there is ample evidence in the record for a jury to conclude that the parties

intended to establish a partnership, joint venture or other arrangement that could subject the Bank

to liability in the circumstances of this action. See, Hayes v. Killinger, 385 P.2d 747, 750 (Or.

1963)("The essential test in determining the existence of a partnership is whether the parties intended

to establish such a relation") and ORS 67.055 (4) (a) (B) (one of the factors indicating that persons

have created a partnership include their expression of an intent to be partners in a business).

Although defendant Bank provides additional evidence (and cases) in an attempt to show there is not

a partnership, the Supreme Court of Oregon has stated that "no one factor is absolutely

determinative."Hayes, 385 P.2d at 750.[1] This is not a case where only one inference could be drawn

by a reasonable jury. Rather, it is clear, especially when the court draws all reasonable inferences

in favor of the nonmovants, that there are genuine issues of material fact that preclude summary

judgment on most of plaintiffs' claims. Even if there were not manifest factual issues present, it

would be better to proceed to a full trial on most of plaintiffs claims because in the circumstances

of this case a fuller record will afford a more substantial basis for decision. See Anderson v. Liberty

Lobby, 477 U.S. 242, 255 (1986); Anderson v. Hodel, 899 F.2d 766, 770-771 (9th Cir. 1990).

---

[1]Plaintiff has objected to certain evidence submitted by the Bank. See #71. In light of the
above, such objections are denied as moot without prejudice to refile at trial.

Page 5 - FINDINGS AND RECOMMENDATION

Claims for Negligence and Negligent Misrepresentation

Defendant Bank also seeks summary judgment on plaintiffs claims for negligence and negligent

misrepresentation. Defendant contends, with legal support, that such claims are barred by Oregon's

economic loss rule because plaintiffs' alleged damages are purely economic and the defendants do

not have a special relationship with plaintiffs. Plaintiffs recognize the Bank's contention in their

opposition. The entirety of their opposition states:

> Plaintiffs do not quarrel with the legal authority cited by [the Bank]
> in its Memorandum of Law on this topic. However, on these facts
> the Bank and plaintiffs were not engaged in a simple lender-borrower
> relationship. As cited above, Cady and [the Bank] occupied a unique
> 'private label' position at Epic[ citations and footnote omitted]. They
> developed a construction loan 'product' that actively put the Bank,
> through its agent Cady, in a position of authority to determine
> whether a plaintiff should borrow more money(Cady Depo. At 39-43,
> 47-51).
> [The Bank's] agent Cady told plaintiffs he would be their "eyes and
> ears" on the Epic assembly line so they would be comfortable in
> knowing when to borrow more money from the Bank. Cady, not
> plaintiffs, communicated with [the Bank] when it was time to draw
> further on the lines of credit. Triable issues of fact exist on whether
> plaintiffs and [the Bank] had a special relationship of the type
> contemplated by the economic loss rule. For this reason, too,
> summary judgment is not proper on this record.

P. 17 of plaintiff's memo (# 70).

Plaintiffs' statement that "Cady was in a position of authority to determine whether a plaintiff

should borrow more money" is not supported by plaintiffs' cites to Cady's deposition. Moreover,

a review of such cites shows that  Cady testified at  deposition  that the customer had to provide

written direction or authorization for a loan advance. P. 41 of Cady deposition. Plaintiffs have not

provided any cases supportive of their position, let alone a case that has facts similar to this action,

and this court has not found one.

Based on the above, including the parties' agreement as to the status of Oregon law, defendants are not liable on a theory of negligence, and the negligence and negligent misrepresentation claims should be dismissed in their entirety.

Claim for Breach of Oral Contract

Plaintiffs assert that defendants entered into an oral contract with plaintiffs agreeing that the aircraft would be delivered on time. The Bank moved for summary judgment on this claim based on a disclaimer of oral agreements plaintiffs signed. Plaintiffs did not respond with any opposition or comment, and, as such, the claim should be dismissed in its entirety.

Counterclaims

The Bank has moved for summary judgment on its counterclaims for payment of the underlying loans. The Bank states that "[o]ther than their claims based on Cady's alleged conduct, there are no alleged defenses to these debts." P. 23 of Memo (#66).

The aforementioned factual issues regarding the relationship between Cady, his company and the Bank precludes summary judgment on the counterclaims. Even if there were not manifest factual issues present, it would be better to proceed to a full trial on most of plaintiffs claims because in the circumstances of this case a fuller record will afford a more substantial basis for decision. See Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); Anderson v. Hodel, 899 F.2d 766, 770-771 (9th Cir. 1990).

Page 7 - FINDINGS AND RECOMMENDATION

**Conclusion**

Defendants' motion (#65) for summary judgment should be allowed in part and denied in part. It should be allowed as to plaintiffs' claims for negligence, negligent misrepresentation and breach of oral contract, and such claims should be dismissed in their entirety. The remainder of the motion should be denied and the matter should proceed to trial [2].

DATED this _13_ day of June, 2011 .

THOMAS M. COFFIN
United States Magistrate Judge

---

[2]It should be noted here that there has been a stipulated dismissal of all claims and coutnerclaims between plaintiffs/counterdefendants Lindsay and Lindsay Assets, LLC and defendant/counterclaimant Bank. See #82.

Page 8 - FINDINGS AND RECOMMENDATION